OVERTON *v.* NASHVILLE TRUST COMPANY *et al.*.

*(Nashville.* December Term, 1902.)

1. **WILLS. CONSTRUCTION.** Investment of money for benefit of life and remainder estates under control of executor as testamentary trustee.

   Where the testator, after making certain devises and bequests, devised and bequeathed all his "other property and estate" to his wife for life, and after her death to be equally divided among his six children, for their use during life, and after their death to vest absolutely in their children, or the issue of their deceased children, and instructed the executor "to invest any money going to either or all of the heirs as he may think best," the executor is constituted a testamentary trustee, whose duty it is to invest the money received by him under the will after the death of the testator's widow in such income bearing property as he may select taking title to himself as trustee for the benefit of the life tenant and the remaindermen, and to retain control and possession of the same, unless the investment be in real estate, when there would be no occasion to withhold possession from the life tenants, and if he declines to execute the trusts then they will be executed under the decree of the chancery court. *(Post, pp.* 52-57.)

   Cases cited and approved: Henderson v. Vaulx, 10 Yerg., 30; McHaney v. McNeilly, 10 Heisk., 535; Covenhoven v. Shuler, 2 Paige, 124.

2. **SAME.** Same. Specific and residuary bequests of articles consumable in the use, distinguished.

Overton v. Nashville Trust Co.

When there is a specific bequest for life with or without limitation in remainder of articles, such as wine, corn, etc., whose use consists in being consumed, the first taker is entitled absolutely; but where the bequest is residuary and not specific, then such chattels must be sold and the interest in the proceeds paid to the first taker, and the principal preserved for remainderman. (*Post, pp.* 55-56.)

Case cited and approved:  Henderson v. Vaulx, 10 Yerg., 30.

3.  **SAME.** Same.  Bequests of articles not consumable in the use. But where there is a bequest for life, of articles not necessarily consumable in the use, such as books, plate, etc., with a limitation over, the first taker is only required to give an inventory of the articles specifying that they belong to the first taker for the limited period only, and afterwards to the remainderman and security will not be required unless there is danger that the articles may be wasted or otherwise lost to the remainderman.  (*Post, p.* 56.)

Cases cited and approved:  Henderson v. Vaulx, 10 Yerg., 30; Foley v. Burwell, 1st Brown, Ch. 279; Covenhoven v. Shuler, 2 Paige, 124.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —H. H. COOKE, Chancellor.

JOHN J. VERTREES and WM. O. VERTREES, for Complainant Overton.

PERKINS BAXTER, for Nashville Trust Company.

W. L. GRANBERY, for defendant Elizabeth Overton.

J. C. McREYNOLDS, for defendant Henry Dickinson.

M. H. MEEKS, for defendant Connie Thompson.

W. G. HUTCHESON, Guardian ad litem.

———

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This bill was filed to obtain a construction of the will of the late John Overton, who died in Davidson county, in this State, during the year 1900. The deceased left a large and valuable estate, all of which he undertook to dispose of in his will. After designating a fund for the payment of his debts, and giving to his wife absolutely certain personalty, the testator then provided that she was to enjoy an estate for life in all of his "other property and estate." Subject to this life estate, he made six divisions of certain of his real estate, and allotted to each of his children one of these divisions. The will then provides as follows:

"The corpus of my estate given to my wife for life, not including the foregoing divisions, I wish after her death to be equally divided among my children.

"My executor is hereby authorized to sell any part thereof not susceptible of division and make title

thereto, and he is hereby instructed to invest any money going to either or all of the shares as he may think best.

"The land devised to each of my children, together with the share going to each in the corpus of my estate, is hereby settled on each of them for their sole and separate use during life and vests absolutely in their children after their death. Should either of their issue die leaving issue, the issue shall inherit the interest of the parent.

"The shares going to my daughters to be free from the debts, contracts and liabilities of their present or any future husband.

"Should any one or more of my children die without isue at the time of his or her death, his or her share shall pass to and vest in my living children, and if any child has died leaving issue, said issue to represent and take the share of the parent."

The widow of the testator died a short time after the probate of the will, and the record discloses that at the time of the filing of the present bill the executor had in his hands, ready for disposition, about $80,000, derived from what is called in the will the "corpus" of the estate, with other sums from the same source, to come at an early day into possession.

The question presented by complainant is, what is his duty, under the will? It is axiomatic that the intention of the testator, if not inconsistent with some settled rule of law, is to be carried into effect; and it is true, if it is fairly inferable from the present will that the testator

intended these shares, as money or other personal property, to go direct into the possession of the several life tenants, without any protection to the remainderman, then it would be the duty of the court to effectuate this intention without regard to the hazard to the remainderman. But we do not think any such purpose is discernible in this will. On the contrary, while it is clear the testator had in mind the interest of his children, still it is equally so that he was solicitous the shares of his estate given to these children should not be wasted or consumed by them, but should simply furnish income to them. This general purpose is discoverable from the whole body of the will.

Another purpose, altogether consistent with that just named, and a complement to it, apparent on the face of the will, is that the money derived by his executor was not to pass into the hands of the tenants for life. Whatever else may be true, these parties are not entitled, either with or without security, to their several shares of the money now in the possession of the executor. This follows from the language of one of the paragraphs of the will quoted above, to wit:

"He [the complainant] is hereby instructed to invest any money going to either or all of the shares as he may think best."

By this clause the executor is converted into a testamentary trustee, and the duty of investing the money so received is imposed upon him; the only discretion left him being as to the character of the investment. The

will does not say in whose name the investment is to be made, or who shall have possession of the property in which the investment is made.   But it is fairly inferable from the fact that the testamentary trustee is to make it, and it is for the benefit of the life tenant and the remainderman that at least this trustee should retain control of it.   If the investment is in real estate, there would be no occasion for his withholding possession from the life tenant, but, apart from authority, it would seem otherwise where the investment was in personal property, easily convertible into money.   In the latter case we cannot think it was the intention of the testator to put the remainderman to the hazard of loss by authorizing the testamentary trustee to turn over, without restriction and uncontrolled, such property to the tenant for life.   If such was his intention, why should he have required an investment by the testamentary trustee? Why should he not have directed the money to be put in the possession of the tenant for life, with power in him to invest as he saw proper?

But let it be conceded the will is silent on this subject; then what direction will a court of equity give with regard to this money?   Where there is a specific bequest for life, with or without limitation in remainder, of articles, such as wine, corn, etc., whose use consists in being consumed, the first taker is entitled absolutely. *Henderson* v. *Vaulx,* 10 Yerg., 30.   But where there is a bequest for life of articles not consumable in the use, such as books, plate, etc., with a limitation over, the first

taker, it seems, was formerly required to give security for the forthcoming of the articles at the termination of the life estate, when the remainderman must take them in the condition to which a prudent use has brought them.

The modern practice, however, in such case, is only to require an inventory of the articles, specifying that they belong to the first taker for a limited period only, and afterwards to the remainderman, and security will not be required unless there is danger that the articles may be averted or otherwise lost to the remainderman. *Foley* v. *Burnell,* 1 Brown, Ch. 279; *Covenhoven* v. *Shuler,* 2 Paige, 124, 21 Am. Dec. 73.

But when the bequest is residuary, and not specific, then such chattels must be sold, and the interest on the proceeds paid to the first taker, and the principal be preserved to the remainderman. *Henderson* v. *Vaulx,* supra; *Covenhoven* v. *Shuler,* supra.

In the present case the court is not called to deal with specific bequests, but with a residuary fund realized by the executor from property coming into his hands, in which legatees for life and in remainder are interested. In such case, why does not the principle in the citation last above apply and control? Why should not the court see that this property be so managed as that, while the life tenants derive from it the fullest advantage to which they are entitled, yet it shall be preserved intact to those in remainder? We can see no reason for a refusal to do so.

In *McHaney* v. *McNeilly,* 10 Heisk., 535, an executor had failed to protect the rights of a remainderman to a fund in his hands, and the court said it was his plain duty to retain the fund, paying the interest of it to the life tenant, or, if he let her have the corpus of the fund, it was his imperative duty to take bond to secure its forthcoming at her death, for the benefit of the remainderman.    It is true, this was said by way of dictum, yet we think, it has been understood by the courts and the bar of the State to announce the true rule on this subject, and it has been accepted generally as fixing a correct practice.    In the present case, to turn over to the legatees for life the money in question, and leave unguarded the remainderman, would be to abuse the interest of the latter, and disappoint the intention of the testator.    This will and should not be done.

A decree will therefore be entered remanding this cause to the chancery court of Davidson county.    The testamentary trustee will be directed to invest the shares of the respective parties in such income-bearing property as he may select, taking title to himself as trustee, or, on his declining to execute the trusts, then they will be executed under the decree of that court.